In the Matter of the Application of CHARLES I. WOODARD, Petitioner, for an Order against LEWIS J. VALENTINE, Police Commissioner of the City of New York, Respondent.

First Department, November 1, 1940.

*Louis George Rudd,* for the petitioner.

*Henry J. Shields* of counsel [*Paxton Blair* with him on the brief; *William C. Chanler, Corporation Counsel,* attorney], for the respondent.

GLENNON, J.   The petitioner, a police officer, on January 30, 1932, was charged with conduct unbecoming an officer, prejudicial to good order, efficiency and discipline.  In the specifications the following appears:

" 1. Said Ptl. Woodard, shield #14284, 20th Precinct, did sometime between June 1, 1931, and September 10, 1931, advise, recommend and induce one, Anna May Brady to invest the sum of $1,200 which was given by her to one Charles Stykles on September 10, 1931, for the purchase of part-interest on a restaurant located at 270 West 73rd Street, Manhattan, which transaction was not consummated.

" 2. Said Ptl. Woodard, on or about December 18, 1931, having been informed by Anna May Brady that check for $1,200 given to her by said Charles Stykles, to reimburse her for the amount advanced, was worthless, did ask for and receive said check, and retained it in his possession for several days, did fail and neglect to report same to proper authorities or take appropriate police action thereon.

" 3. Said Ptl. Woodard, on divers occasions between June 1, 1931, and the early part of September 1931, visited and remained in premises 270 West 73rd Street, Manhattan, and having knowledge that said place was carried on suspected list as a ' speakeasy,' did fail and neglect to take appropriate police action thereon, or report same to his commanding officer."

The charges and specifications were not served on petitioner until April 8, 1932. A hearing was held on April 14, 1932, before Trial Commissioner Nelson Ruttenberg. Petitioner was represented by counsel and entered a plea of not guilty. Deputy Inspector Alexander C. Anderson gave testimony as to the alleged facts which were adduced as the result of an investigation made by him. For the most part his testimony was hearsay.

One Donald T. Meeks, called as a witness, denied, in substance, that he had signed the name of Roger Meeks to the worthless check which was referred to in the specifications. The hearing then was adjourned to May 19, 1932, because of the absence of Anna May Brady, the complaining witness, and two other witnesses, Mrs. Anna Brady, her mother, and Miss Mollie Higgins, who were non-residents. At the subsequent hearing these witnesses again failed to appear. The record shows the following:

" Dep. Com. Ruttenberg: Apparently neither of the witnesses have appeared today. I understand a communication has been received regarding the payment due under this agreement — has there been any failure in meeting these payments as yet?

" Mr. Rudd: No, there has not been any, except for the last payment, and we expect to make that payment — there is only one now due, that is due on the 17th. We expect to make that payment, although he is really the unfortunate innocent party in the case, for the reason I have looked into the matter, and I understand he never got that money, but he has agreed to pay it back, he has made six payments already, and he has got four years to go to pay it.

" Dep. Com. Ruttenberg: Is it his intention to complete these payments as provided for in the agreement?

" Mr. Rudd: He does absolutely, and it is his endeavor to remain in the Police Department, at the present time, so he may be able to pay it.

" Dep. Com. Ruttenberg: Well, in view of his agreement to make those payments, and based upon his continued payment of the sums provided for in the agreement, this case will be marked adjourned indefinitely, and to be placed on the calendar upon the first information received of any default in payment.

" Mr. Rudd: That is satisfactory, and I want to ask this, if you please, Commissioner, I have looked through the matter, it certainly wasn't an attempt on the part of this officer to deprive a stranger of any money, or anything, they were all friends, it was a friendly transaction, and that is the reason the case is here now, it has been disposed of in the Magistrates' Court, and he has agreed to pay it, although he is entirely innocent.

" Dep. Com. Ruttenberg: All right, that will be the way it is disposed of.

" Mr. Rudd: Thank you.

"¦(Adjourned without date.) "

The agreement which was referred to was reduced to writing and provided, in effect, that the petitioner was to pay semi-monthly installments of twenty dollars on the third and twentieth days of each month commencing with February 3, 1932, and further that in the event of the failure of the petitioner to pay the installments promptly, he agreed " that a confession of judgment executed simultaneously herewith shall be filed against him and upon execution thereof, credit will be allowed for any payments theretofore made." It is alleged in the petition, and not denied, that all the payments due under the terms of the agreement were completed by July, 1938.

Pursuant to an order, the petitioner appeared before Third Deputy Commissioner Michael A. Lyons on January 26, 1939. Petitioner was not represented by counsel at this hearing. A discussion was had between the trial commissioner and the petitioner in which the latter outlined the circumstances leading up to the agreement he had made with the complaining witness. Apparently the deputy commissioner was " in the dark," as the petitioner asserted he was. The record quotes him as saying: " What about this statement here from your attorney that it was paid in full? " The petitioner replied, " Mr. Edelstein was not my attorney. Mr. Edelstein was attorney for the Bradys. My attorney in this case was Jacob Rudd, and Mr. Rudd and Mr. Edelstein, who represented the Bradys, made the agreement. * * * "

The petitioner, called as a witness, gave his version as to the circumstances leading up to the signing of the note which was the subject of the controversy. In effect, he stated that the amount due had been paid. The trial commissioner, according to the record, stated: " Q. All I'm concerned with here now is the trial of these charges before me. There's nothing in these charges concerning the payment or non-payment of the amount of your agreement. Maybe additional charges will follow against you if you don't clear that up. A. I don't know what I could do. Anything further on it I've given them that judgment. I could go to the pay office and find out if it's been paid out the amount and to whom it was paid to. Q. Well, if you want to straighten yourself out in the matter I suggest that you do that, to do whatever is necessary, do something to clear up the question of whether or not you're in default on that agreement because it may follow afterwards that additional charges would be preferred against you.

A. I'll go down there and then communicate with their attorney and find out. Dep. Com. Lyons: All right."

Later, on March 1, 1939, without a further hearing, the petitioner was found guilty as charged and on March 24, 1939, he was dismissed.

In his answer to the petition the defendant set forth the following " *Fifth.* That thereafter the Police Department made periodical inquiries to determine whether petitioner was complying with the terms of his agreement with Miss Brady. One such inquiry was made to petitioner's attorney, Benjamin B. Edelstein, Esq., on November 30, 1937, and on December 9, 1937, Mr. Edelstein wrote to the department advising that petitioner's payments would be completed in December, 1938. A copy of said letter is annexed and marked Schedule E. In January, 1939, an oral inquiry was made of Mr. Edelstein respecting the payments and he advised the department the payments had been made in full. The matter was then placed upon the hearing for January 26, 1939, for final disposition."

Apparently, the defendant and also the trial commissioner were under the mistaken impression that Benjamin B. Edelstein, who wrote the letter of November 30, 1937, and later in January, 1939, stated that the payments had been made in full by the petitioner, was the latter's attorney. The fact of the matter was, as indicated by the record, that Mr. Edelstein represented the complaining witness, Anna May Brady. This is borne out not only by the testimony of the petitioner but also by the agreement which is referred to in the return.

We are inclined to the view that since the petitioner has complied fully with the agreement he made in 1932 before Deputy Commissioner Ruttenberg, the charges against him should have been dismissed. Therefore, we have reached the conclusion that the determination should be annulled, with fifty dollars costs and disbursements, and the petitioner reinstated.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Determination unanimously annulled, with fifty dollars costs and disbursements to the petitioner, and the petitioner reinstated.